**STATE TEACHERS RETIREMENT BOARD, et al., Plaintiffs,**

v.

**FLUOR CORPORATION and Manufacturers Hanover Trust Co., Defendants.**

**No. 76 Civ. 2135 (RWS).**

United States District Court, S.D. New York.

Dec. 12, 1983.

See also 566 F.Supp. 945.

Schwartz, Shapiro, Kelm & Warren, Columbus, Ohio, for plaintiffs by Russell A. Kelm, Columbus, Ohio, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Fluor Corp. by Raymond L. Falls, Charles A. Gilman, Joseph I. Loonan and Julie A. Petruzelli, New York City, of counsel.

Kelley, Drye & Warren, New York City, for defendant Manufacturers Hanover Trust Co. by Richard J. Concannon, Robert E. Crotty and Kevin J. Walsh, New York City, of counsel.

## OPINION

SWEET, District Judge.

Once again this class action securities action brought by plaintiff State Teachers Retirement Board ("State Teachers") against defendants the Fluor Corporation ("Fluor"), certain of its officers and Manufacturers Hanover Trust Company ("Manufacturers") has succeeded in raising a difficult and vexing issue of securities law. This time it is the effect to be given *Dirks v. SEC*, — U.S. ——, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983). The issue is presented in the context of motions by Fluor and Manufacturers for summary judgment dismissing the Fourth Amended Complaint pursuant to Rule 56, Fed.R.Civ.P. For the reasons and with the reluctance described below, I will deny the motions, and this action will be set down for trial before the jury demanded by State Teachers.

There have been a number of opinions in this action rendered by this court, one of which, 500 F.Supp. 278, was affirmed in part and reversed in part by the Court of Appeals. 654 F.2d 843. Familiarity with those opinions, the facts there set forth and the vocabulary of the litigation is assumed. The regret which attaches to this decision is derived from the history of the action and a growing persuasion that the interests of the parties and the public have been ill served by the course of this litigation which has become a Cooks' Tour conducted by skilled counsel over an ever-changing landscape of securities law. The balance of justice between finality and resolution on the one hand and the careful consideration of complicated issues on the other has become increasingly precarious.

The action was filed in 1976 by State Teachers, a public pension retirement fund, its principal allegation being a failure of Fluor to affirmatively disclose to the market, confidential material, inside information, namely, its $1 billion contract to construct a coal gasification plant for South African Coal, Oil and Gas Corporation, Ltd. ("SASOL"). As an alternative cause of action, claims were made for violations of the securities law arising out of a tip of material inside information, relating to an increase in Fluor's backlog, projections of increases in Fluor's earnings per share and the likelihood of Fluor's obtaining projects other than the SASOL coal gasification contract referred to below. Since then, the issues of materiality, public knowledge, the effect of the cap described in *Elkind v. Liggett & Myers*, 635 F.2d 156 (2d Cir. 1980), and the existence of a California cause of action for fiduciary duty have been determined, all against the tension created by the difficulty in determining the

proper inferences to be drawn from facts established by the record.[1]

Initially this court found that the SASOL contract information that may have been conveyed to Manufacturers, namely, that "SASOL could go" was deducible from public information. However, it was determined on appeal that an issue of fact had been presented, namely, whether the knowledge of a bid by Fluor on the SASOL contract (an inference to be drawn from the "SASOL could go" comment) would have been material inside information, given Fluor's policy against announcing its bids. Additionally, the Court of Appeals held that the purchase of Fluor stock by Manufacturers after Winterfeldt's return to New York more than eight days after the alleged tip, created a factual issue of Manufacturers' scienter. The line between factual, as opposed to legal issues, and facts as opposed to inferences based upon facts has been difficult for this court to define in this action.[2] It is against this background that the instant motion must be resolved against the defendants despite the availability of complete discovery to the parties and what appears at this stage to be the absence of proof necessary to satisfy the requirements of *Dirks*.

## I. *The Scope of Dirks*

Initially, State Teachers seeks to limit *Dirks* to its facts—a special situation in which the "tip" was evidence of a corporate crime and the tipper was thus a sympathetic figure—a "whistle blower." However, the Supreme Court specifically stated that its holding in *Dirks* extended beyond the facts of that case:

[o]n its facts, this case is the unusual one.... Nonetheless, the principle at issue here extends beyond these facts.

— U.S. at —— n. 18, 103 S.Ct. at 3263 n. 18. Dirks had argued before the Supreme Court that the receipt of "evidence of a corporate crime" should not constitute the receipt of "material inside information." — U.S. at —— n. 25, 103 S.Ct. at 3266 n. 25. The Court had the opportunity to decide the case on this limited ground and could have carved out an exception from the definition of "material inside information" to allow an outsider to receive "evidence of criminal activity." Notwithstanding, the Court chose to decide *Dirks* on broader grounds. Indeed, in *Dirks* the Supreme Court established "a guiding principle for those whose daily activities must be limited and instructed by the SEC's inside-trading rules...." — U.S. at ——, 103 S.Ct. at 3266.

The opinion made evident the awareness of its implications and the depth of the problem of dissemination of marketplace information that it sought to address. The SEC had maintained the broad proposition "that anyone who knowingly receives non-public, material information from an insider has a fiduciary duty to disclose before trading." — U.S. at ——, 103 S.Ct. at 3262. The Supreme Court rejected that view, stating:

The SEC's rule—applicable without regard to any breach by an insider—could have serious ramifications on reporting by analysts of investment views.

— U.S. at —— n. 18, 103 S.Ct. at 3263 n. 18.

The Court stated that a reason for its rejection of this position was the fact that such a limitation on analyst activities would harm the securities markets:

[t]he value to the entire market of [analysts'] efforts cannot be gainsaid; market efficiency in pricing is significantly enhanced by [their] initiatives to ferret out and analyze information, and thus

---

**1.** As defendants delight in pointing out, this is the fourth complaint that State Teachers has proposed, but the history of the rulings on that subject are not germane to this motion, except as one further example of the difficulties presented in reaching a disposition of this litigation.

**2.** Indeed, there have even been occasions when the trial court has noted facts sufficient to support an inference drawn by a properly instructed jury, only to have the reviewing court reach the opposite conclusion. *Moore v. Eli Lilly,* 457 F.Supp. 75 (S.D.N.Y.1978), *rev'd,* 662 F.2d 935 (2d Cir.1981).

the analysts' work redounds to the benefit of all investors.

— U.S. at —— n. 17, 103 S.Ct. at 3263, n. 17 (citation omitted).

The Court stated:

We reaffirm today that "[a] duty [to disclose] arises from the relationship between parties ... and not merely from one's ability to acquire information because of his position in the market." [citation omitted]

Imposing a duty to disclose or abstain solely because a person knowingly receives material nonpublic information from an insider and trades on it could have an inhibiting influence on the role of market analysts, which the SEC itself recognizes is necessary to the preservation of a healthy market. It is commonplace for analysts to "ferret out and analyze information" ... and this often is done by meeting with and questioning corporate officers and others who are insiders. And information that the analysts obtain normally may be the basis for judgments as to the market worth of a corporation's securities. The analysts' judgment in this respect is made available in market letters or otherwise to clients of the firm. It is the nature of this type of information, and indeed of the markets themselves, that such information cannot be made simultaneously available to all of the corporation's stockholders or the public generally.

— U.S. at ——, 103 S.Ct. at 3263; citations and footnotes omitted.

*Dirks* is applicable to this action.

## II.  *The Dirks Standard*

■ Rejecting Dirks' narrow view and the SEC's broad rule, the Court held that there are two elements to the scienter that must be established to hold a tipper and a tippee liable. First, the tipper must have breached his fiduciary duty. Second, the tippee must have been aware of the breach by the tipper, in order to be held to have breached what might be described as the derivative duty to the shareholders. State Teachers in order to prevail must establish the elements of securities fraud as described in *Dirks.*

### A.  *The Tipper*

The question to be answered is thus posed by *Dirks:*

In determining whether a tippee is under an obligation to disclose or abstain, it thus is necessary to determine whether the insider's "tip" constituted a breach of the insider's fiduciary duty. All disclosures of confidential corporation information are not inconsistent with the duty insiders owe to shareholders. In contrast to the extraordinary facts of this case, the more typical situation in which there will be a question whether disclosure violates the insider's *Cady, Roberts* duty is when insiders disclose information to analysts.... In some situations, the insider will act consistently with his fiduciary duty to shareholders, and yet release of the information may affect the market. For example, it may not be clear—either to the corporate insider or to the recipient analyst—whether the information will be viewed as material nonpublic information. Corporate officials may mistakenly think the information already has been disclosed or that it is not material enough to affect the market. Whether disclosure is a breach of duty therefore depends in large part on the purpose of the disclosure. This standard was identified by the SEC itself in *Cady, Roberts:* a purpose of the securities laws was to eliminate "use of inside information for personal advantage." ... *Thus, the test is whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach of duty to stockholders. And absent a breach by the insider, there is no derivative breach.*

— U.S. at ——, 103 S.Ct. at 3265 (emphasis added; citations and footnote omitted).

Of course, "determining whether an insider personally benefits from a particular disclosure, a question of fact, will not always be easy for courts," which must fo-

cus on "objective criteria, *i.e.*, whether the insider receives a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or reputational benefit that will translate into future earnings." — U.S. at ——, 103 S.Ct. at 3266.

## B. *The Tippee*

█ In the event that it is established that the tipper has breached his fiduciary duty, then the tippee may be held liable in the following circumstances:

> Thus, a tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders ... and the tippee knows or should know that there has been a breach. As Commissioner Smith perceptively observed in *Investors Management Co.:* "[T]ippee responsibility must be related back to insider responsibility by a necessary finding that the tippee knew the information was given to him in breach of a duty by a person having a special relationship to the issuer not to disclose the information...."

— U.S. at ——, 103 S.Ct. at 3264 (footnotes omitted).

## III. *The Use of Summary Judgment and Related Problems*

Fluor and Manufacturers believe summary judgment can be granted because there is no factual dispute citing *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 107 (2d Cir.1981), and *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). State Teachers resists this conclusion, citing *SEC v. Research Automation Corp., supra;* *FLLI Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563 (2d Cir.1977); *American Electric Power Co. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D.N.Y.1976).

Since no additional discovery is now sought and since additional discovery was permitted directed to the motion after it was filed, it can be assumed that all the facts relative to the motivation of Etter and Tappan [3] are now known, as well as Winterfeldt's knowledge and scienter, namely, Etter's continued salary and promotion to vice president two years or so after the alleged tip, Fluor and consequently Etter's interest in institutional holders of Fluor stock such as Manufacturers, Tappan's stock holdings and those of his son, and Winterfeldt's testimony concerning his understanding of the information he had received.

█ The nature of this case, the technicality of the issues involved, the limited liability, the length of time devoted to the litigation by the parties so far, and the anticipated duration and expense of trial, all provide strong temptation, if not compulsion, to reach the legal conclusion that proof of stock ownership alone and performance of an assigned duty cannot suffice to constitute the personal or reputational benefit described in *Dirks.* Indeed, such a conclusion would seem to be the very purpose to which Rule 56 was designed, particularly when the link between the alleged tip and the benefit is either speculative or inferential depending on one's point of view. Part of the conflict results from the tensions established between the desire for predictability (performance of an assigned task cannot rise to a reputational benefit, for example) and the need to resolve each case on its own facts (the relationship, if any, for example, between Etter's promotion and his dealings with Manufacturers). The Court of Appeals has noted that a factual hearing is especially important in cases where motive is an issue, *see Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979); *SEC v. Research Automation, supra,* 585 F.2d at 33; *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65,

---

**3.** Although Fluor urges that there remains no issue as to the existence of a tip by Tappan by virtue of the ruling with respect to Paragraph 33(c) of the answer to interrogatories directed to the laundry list, the deposition testimony of

Winterfeldt fails to distinguish whether Tappan disclosed the backlog and earnings other than those described in item 3(a). The issue of Tappan's breach of fiduciary duty thus remains in the case.

71 (2d Cir.1971).[4] Since in this case on review inferences with respect to scienter issues have been held to exist which escaped the trial judge, despite a present persuasion that the facts have not been and will not be presented sufficient to establish the breach of fiduciary duty that State Teachers seeks to establish, I conclude that State Teachers is entitled to present the facts to the jury from which it now seeks to infer the improper motive of Messrs. Etter and Tappan and the scienter of Manufacturers.

Fluor also seeks summary judgment on the ground that it cannot be vicariously liable for the tipping. On this question, Fluor and State Teachers agree that the common-law principles of respondeat superior govern whether Fluor should be liable for its employees' and officers' violation of the federal securities laws. Under these principles, an employer is liable for an employee's acts if the employee committed the acts within the scope of his employment. *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 716 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1356–57 (S.D.N.Y.1983), *aff'd on other grounds,* 719 F.2d 5 (2d Cir.1983); *O'Connor & Assoc. v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179, 1194–95 (S.D. N.Y.1981). The factors relevant to this determination include whether the act took place on the employer's facilities, whether the person dealing with the employee could have thought the employer had authorized the acts, the employee's usual tasks and whether the employee's acts are motivated by a desire for personal profit. *Id.* These factors make a finding of vicarious liability much less likely in an action governed by *Dirks,* because of the requirement of personal benefit to the tipper. However, in this case, there are special facts alleged from which a jury might infer that the tips were made in the scope of employment and still gave a reputational benefit to the employee. Etter was Fluor's manager of public relations at the time of the tip and he met with Winterfeldt as part of Fluor's regular investor-relations program, during regular business hours and with Fluor's knowledge and authorization. In addition, there are allegations that Etter may have hoped that the tip would contribute to a rise in the stock's price. Although it is unclear how a policy of selective disclosures would accomplish this, such an allegation suggests that the tip would benefit Fluor as well as Etter, a circumstance relevant to the respondeat superior issue. That issue also will be placed before the jury and the summary judgment sought by Fluor on that issue will be denied.

State Teachers will provide Fluor and Manufacturers with its draft of the pretrial order by January 15, 1984. Fluor and Manufacturers will respond by January 30. In addition to the customary portions of the pretrial order, including requests to charge, each side will provide a proposed initial preliminary instruction to be given to the jury at the outset of the trial prior to openings and the taking of testimony. A pretrial conference will be held as soon as practicable after January 30 and trial will commence on February 6 or as soon thereafter as possible. This schedule, of course, is subject to modification upon further application.

IT IS SO ORDERED.

---

4. Indeed, State Teachers has cited *Conrad v. Delta Air Lines,* 494 F.2d 914 (7th Cir.1974) for the proposition that even a sworn denial fails to prevent an inference of improper motive if such "could reasonably be inferred from facts before the court." As has already been pointed out, the reasonableness of the inference is the lever by which courts move to obtain the result that is deemed appropriate.