**STATE TEACHERS RETIREMENT BOARD, et al., Plaintiffs,**

v.

**FLUOR CORPORATION and Manufacturers Hanover Trust Co., Defendants.**

**No. 76 Civ. 2135 (RWS).**

United States District Court, S.D. New York.

Aug. 23, 1984.

Schwartz, Shapiro, Kelm & Warren, Columbus, Ohio, for plaintiffs; Russell A. Kelm, Columbus, Ohio of counsel.

Cahill, Gordon & Reindel by Raymond L. Falls, Charles A. Gilman, Joseph I. Loonan, Julie A. Petruzzelli, New York City, for defendant Fluor Corp.

Kelley, Drye & Warren, New York City, for defendant Manufacturers Hanover Trust Company; Richard J. Concannon, Robert E. Crotty, Kevin J. Walsh, New York City, of counsel.

## OPINION

SWEET, District Judge.

*State Teachers Retirement Bd. v. Fluor Corp. and Manufacturers Hanover Trust Co.*, once again has presented what appears to be a fresh question in securities law, ably presented by skilled and forceful advocates. Familiarity with the underlying factual situation is assumed. *See State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843 (2d Cir.1981).

The thorns of the dilemma requiring resolution at this stage of trial is the reach of *Dirks v. SEC,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) and its redefinition of tippee liability under § 10b of the Securities Act of 1934, 15 U.S.C. § 78j(b) in connection with the jury charge, shortly to be given. I conclude that *Dirks* requires that as a prerequisite to tippee liability it must be established that the tippee traded on the basis of material, nonpublic information, *knowing* that such information was passed to the tippee in violation of the tipper's fiduciary obligation and for the tipper's personal gain.

Although *State Teachers* has attempted to sidestep the impact of *Dirks* by arguing that the unusual facts of *Dirks* limit that case as precedent, this court has already held that *Dirks* is binding in this action. *State Teachers Retirement Bd. v. Fluor Corp.*, 576 F.Supp. 1116, 1119 (1983). Nonetheless, it is the apparently different distribution of equities between the facts of *Dirks* and the facts alleged here that ·presents the dilemma of the application of *Dirks*. While Dirks as a tippee appeared to be furthering the public interest in uncovering fraudulent accounting on the part of a public corporation, the alleged defendant tippee, Manufacturers, in this case is alleged to have used material, nonpublic information for the financial gain of its customers. However, the Court in *Dirks* did not find the use to which the tippee put his knowledge to be determinative of the legal standard for tippee liability, and the more rigorous standard defined in *Dirks* applies to the facts of this case.

**Tippee Liability Under Dirks**

In *Dirks* the Supreme Court once again stated that the responsibility to limit market activity as a result of the possession of material, nonpublic information springs not from possession of such information *per se*, but, rather, from the relationship between parties that had led to the acquisition of that information. "We reaffirm today that '[a] duty [to disclose] arises from the relationship between parties ... and not merely from one's ability to acquire information because of his position in the market.'" *Dirks, supra*, 103 S.Ct. at 3263, quoting *Chiarella v. United States*, 445 U.S. 222, 232–33, n. 14, 100 S.Ct. 1108, 1116–17, n. 14, 63 L.Ed.2d 348 (1980). Because the incentive to gather market information derives from the ability of traders to use that information profitably, the Court in *Dirks* was loathe to find that the mere possession and use of nonpublic, material information amounted to a 10b–5 violation. Such restrictions could have restrained the endeavors of market analysts, whose inquiries are "necessary to the preservation of a healthy market." *Dirks, supra*, 103 S.Ct. at 3263.

Since tippees, unlike the corporate inside tipper, will often not have a preexisting fiduciary duty to the shareholders of traded stock, the Court defined an alternative method of establishing a derivative liability running from the tipper to the tippee. If an insider may not breach his fiduciary obligation to shareholders, "[s]imilarly, the transactions of those who knowingly participate with the fiduciary in such a breach are 'as forbidden' as transactions 'on behalf of the [tipper] himself.'" *Id.* at 3263, *citing Mosser v. Darrow*, 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1957). It is not, then, the knowledge of possession of material, nonpublic information that creates tippee liability; rather, it is the knowledge of joint participation, *with* the tipper, in the tipper's breach of duty. The court states that "[T]ippee responsibility must be related back to insider responsibility by a necessary finding that the tippee knew the information was given to him in breach of a duty by a person having a special relationship to the issuer not to disclose the information." *Dirks*, 103 S.Ct. at 3264, *quoting In re Investors Management Co.*, 44 S.E.C. 633, 651 (1971).

█ The essential determinations in establishing tippee liability therefore focus 1) on whether the tipper has breached his duty and 2) on whether the tippee, in receiving the information, knew, or had reason to know, of the tipper's breach. Subsequent to *Dirks*, I conclude that a tipper breach will be found only when material, nonpublic information is transferred for the personal benefit of the tipper. "[T]he test is whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach of duty to stockholders. And absent a breach by the insider, there is no derivative breach." *Dirks, supra*, at 3265.

█ The second prerequisite to tippee liability—tippee knowledge of tipper breach—necessitates tippee knowledge of *each element*, including the personal benefit, of the tipper's breach. Derivative liability can attach only if the tippee recog-

nizes that the relationship between tipper and tippee is such that the tippee has effectively become a "participant after the fact in the insider's breach." *Dirks* at 3264, quoting *Chiarella v. United States, supra,* 445 U.S. at 230 n. 12, 100 S.Ct. at 1115 n. 12. Consequently, unless the tippee knew or had reason to know that the tipper had satisfied the elements of tipper liability, the tippee cannot be said to be a knowing participant in the tipper's breach. Were it otherwise, Dirks, in acknowledged possession of material inside information, would have been a tippee.

It is this understanding of *Dirks* that compels the instruction that will be given to the jury with respect to the necessary finding of scienter on the part of Manufacturers: "In order to find scienter in this case as to Manufacturers, State Teachers must establish first that a Fluor employee communicated material, nonpublic information for his own personal gain as I have just defined that term. Second, State Teachers must establish that Winterfeldt knew or had reason to know that the information was material and nonpublic and knew or had reason to know that Tappan or Etter or both communicated the material, nonpublic information for direct or indirect personal gain...."

Further, this understanding of *Dirks* compels the wording of question 8 of the *Special Verdict:* "Did Lester Winterfelt ... know that the information ... was material and nonpublic and disclosed for the personal benefit of the Fluor employee?"

██ It is recognized that this reading of *Dirks* permits the possibility, perhaps here present, that an improperly motivated tipper may pass information to a tippee who lacks knowledge of the tipper's personal benefit and who may therefore trade on inside information without liability. As Justice Blackman noted in dissent, "The fact that the insider himself does not benefit from the breach does not eradicate the shareholder's injury ... [T]he shareholder still has lost because of the insider's misuse of nonpublic information." *Dirks,* 103

S.Ct. at 3271. However, the majority in *Dirks* considered the enhancement of the distribution of information to be paramount and therefore focused its 10b–5 analysis on the relationships between the tipper and the corporation and the tipper and the tippee, not upon the use of the tipped information. Whatever my own resolution of this issue might be, I conclude that under *Dirks* inequality of access to material, nonpublic information, will not support a 10b–5 claim without proof of the tippee's knowledge of the tipper's breach.

**IT IS SO ORDERED.**